†STEPHEN FEIKE v. C. & E. RAILROAD CO. ET AL.

1. APPEAL BY A PARTY CARRIES UP QUESTIONS DECIDED FOR AND AGAINST HIM.

Where the roadway and franchises of an insolvent railroad company have been sold for the payment of its debts, under the order of the court of common pleas, and a controversy arises in such court between two persons claiming to be creditors of such corporation as to the validity of the claim of one of them, and as to their priority on distribution of the proceeds of the sale, a judgment and decree finding the claim in controversy to be a valid one, and giving it priority over the claim of the other creditor, is the subject of appeal to the circuit court, and the case stands there for trial on both issues raised in the common pleas.

2. CONTRACT TO BUILD BRIDGE WITHOUT INTERFERING WITH RUNNING OF TRAINS NOT A WARRANTY TO DO SO.

Where the receiver of a railroad company, under the order of the court, had contracted with another, for the rebuilding of a bridge on the line of road, according to a specified plan, such work to be done in a skillful and workman-like manner under the supervision of the chief engineer of the railroad company, and so as not to interfere with the running of trains over the road, and such work was done according to the plans, and under the direction and supervision of such engineer and in a skillful and workman-like manner, and without negligence on the part of the contractor; but such bridge when nearly completed was thrown down by a train passing over the same, which had probably been derailed before reaching the same, or by some other accident not caused by the fault of the contractor, the latter is not liable for the damages thus caused, and the clause in the contract that the work was to be done in such manner as not to interfere with the running of trains over the road, was not an absolute warranty by the contractor of the safe running of trains over such bridge.

APPEAL from the Court of Common Pleas of Clinton county.

SMITH, J.

This was an action, in which on the answer and cross-petition of Judge Ashburn, as trustee for the first mortgage bondholders, the railroad of the defendant company was sold, under the order of the court of common pleas, and a decree entered, distributing the proceeds of sale to the various parties and lienholders, according to their several rights and priorities, as determined by the court. It was there found that T. A. Hardman had a valid claim against the railroad company, founded on a contract for the building of a bridge thereon over the east fork of the Litte Miami river at Batavia, entered into between him and the Receiver of such road, acting under the order of the court, which had appointed him, and that he was entited to be paid from the proceeds of the sale of the road, before payment to Ashburn, trustee. From this decree the latter appealed. We state our views on the questions raised and argued, briefly:

First—We are of the opinion that the finding of the amount in favor of Hardman, and the decree that it be paid from the proceeds of sale before anv payment to Ashburn, trustee, having been vacated by the appeal, that the whole controversy between them is before us, precisely as it was before the court of common pleas, and the question of the validity of the claim of Hardman, and its priority to that of Ashburn, is to be decided by us.

Second—We understand it to be conceded by counsel for the trustee, that Hardman has a valid claim for the amount found in his favor by the court of common pleas, unless by the breach of the contract so entered into between him and the Receiver, or by his negligence or want of skill in doing the work contracted by him to be done, the company has suffered loss to an amount equal to, or greater than his claim against it. It is also admitted by the counsel for Hardman, that by the fall of the bridge while in process of construction by him, the company has suffered loss to an amount far in excess of his claim.

†See note to Feike v. C. & E. Ry. Co., 2 O. C. D. 41.

Third—The question of the liability of Hardman for this loss depends upon the construction to be given to the written contract, and on the evidence in the case.   And in the first place we may say, that in our judgment, Hardman, by this contract did not warrant or guarantee that during the progress of the work the trains of the company should pass safely over said bridge.   The circumstances were these:

In July, 1884, at the time of the making of the contract in question, the railroad company had in operation a railroad from Cincinnati to some point east of Batavia.  Some years before, a bridge had been built over the east fork at this point, and was in use—trains passing over it daily.   But the receiver desiring to reconstruct it, plans and specifications were prepared, and on July 7, 1884, a contract was entered into with Hardman, by which he was to furnish all materials (except as therein provided), and construct in a skillful and workmanlike manner, in every respect, complete and ready for crossing, a Howe truss deck bridge of four spans, the length of which was given, and of such materials and in such a manner as would strictly conform to the plans, specifications and other diagrams of the several plans which were annexed to, and made part of the agreement.   The work was to be commenced immediately, and completed by October 15, 1884, and it was stipulated that if the receiver should desire to change the guage of the road before Hardman was "ready to put in the false work necessary to carry the floor system of the present bridge," he might have it done by paying the cost of the additional false work necessary to be put in.   It was also provided that the work should be executed under the supervision of the chief engineer of said company, who should have full power to reject any and all materials and workmanship which did not in his opinion conform to the spirit of the agreement.   It stipulated further that "the above work is to be done in such manner as not to interfere with the running of the trains over the road."

The plans and specifications also, as we understand, show that the track of the road, as it then stood, was not to be disturbed (at least until the final completion of the work), nor was it to rest immediately upon the timbers that were to be placed there by Hardman, but was to be about four feet above them, and to be supported by blocking the same up, and which had been done, and the original track as thus supported was in use at the time of the accident.     This was so done, evidently, with the purpose of lowering the track the four feet when the company saw proper to do so—and we may say further that it is clear from the evidence that all of this work had been done under the supervision of the chief engineer of the company, who approved of the mode adopted to support the track as it stood, and of the way in which it was carried out.

It seems to us, as we have said, that Hardman, by the contract, did not warrant or guarantee the safety of the bridge while the work was being done.   That the maintenance of the track over the brige, as it stood when the contract was entered into, was not committed to him, but was retained by the company, which also fully reserved the right to direct the manner in which the work should be done—and that thus Hardman was to support the track, and so arrange his work thereon, as not to interefere with the running of trains over the road.

Of course, if there was negligence or unskillfulness on his part which caused the accident, even when carrying out the directions of the engineer, he would be liable therefor.   But we are unable to see from the evidence that such is the case.   The probability is that the injury was caused by a derailment of the engine drawing the train, at a point west of that where the bridge fell, and, by the bumping of the engine over the cross-ties and timbers the structure was so jarred and loosened that it fell.

Whether it was brought about by the breaking of the axle of the engine (as there is reason to believe), or by some fault in the original track itself (but which was unknown to Hardman), can not be told; but we think that Hardman was not responsible for either, and our finding will be in his favor.

Simrall & Mack, attorneys for Hardman.

C. B. Matthews, attorney for trustee of the bondholders.